MACK PAVING CO. OF NEW YORK v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 17, 1911.)

1. MUNICIPAL CORPORATIONS (§ 368*)—CONTRACTS—CONSTRUCTION.

A contract to repave the streets of a city and to maintain the same for a specified period after acceptance, which stipulates that the contractor agrees to make repairs, and during the period of maintenance to take up, lay, and restore on notice the pavement over trenches for water and gas pipes and sewers or other purposes at a specified price, does not give the contractor an exclusive right to relay a pavement during the period of maintenance, and the act of the city in permitting a railway company, required by Railroad Law (Laws 1890, c. 565) § 98, as amended by Laws 1892, c. 676, to keep in repair the part of the streets used by its tracks, to take up and repair a street at its own expense by employing another contractor, is not a violation of the contract, since the railroad company, not being a party to the contract, is not bound thereby, and since the city does not agree to pay for such work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. § 368.*]

2. MUNICIPAL CORPORATIONS (§ 1022*)—ACTIONS ON CLAIMS—CONDITIONS PRECEDENT.

A compliance with Greater New York Charter (Laws 1901, c. 466) § 261, providing that no action shall be maintained against the city unless the complaint shows the presentation to the comptroller of the claim on which the action is founded and his refusal to pay the same for 30 days, is a condition precedent to the maintenance of an action against the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2193; Dec. Dig. § 1022.*]

3. MUNICIPAL CORPORATIONS (§ 1034*)—ACTIONS—ISSUES—PLEADINGS.

Where the complaint in an action against the city of New York alleged that, more than 30 days before the commencement of the action, the claim sued on was presented to the comptroller for settlement, but that no part thereof had been paid, an answer, denying that the city had any knowledge or information sufficient to form a belief as to the allegation, raised an issue as to the proper presentation of the claim, and plaintiff, to recover, must allege and prove presentation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2203–2205; Dec. Dig. § 1034.*]

Appeal from Trial Term, New York County.

Action by the Mack Paving Company of New York against the City of New York. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

Terence Farley, for appellant.
L. Laflin Kellogg, for respondent.

DOWLING, J. On July 23, 1900, the city of New York entered into a contract with the National Asphalt Company for the "regulating and paving with asphalt pavement, on present pavement relaid as foundation, the roadway of Broadway, including space around Union Square, from Fourteenth street to Forty-Second street, together with

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

all work incidental thereto." This contract was entered into pursuant to a resolution of the board of public improvements, under section 415 of the Greater New York Charter (Laws 1897, c. 378), authorizing "the repaving with asphalt on the present pavement with a fifteen years' guaranty of maintenance from the contractor of the roadway, from Fourteenth to Forty-Second streets, including the paving of the space around Union Square." The proposal for bid or estimate under which the contract was let contained the following statement:

### "Period of Maintenance.

"Bidders are particularly cautioned that in no case will they be permitted to use materials either in quantity or quality different from those specified, and also that a provision in the contract requires the maintenance of the pavement in good condition for the period of 15 years from the final completion and acceptance thereof."

By the contract the contractor, the party of the second part, covenanted, promised, and agreed:

"That he, the said party of the second part, his successors, heirs, executors, administrators or assigns, shall and will furnish and provide, at his or their own proper cost and expense, all the necessary materials and labor, and in a good, firm and substantial manner, and in strict accordance with the following specifications, regulate and pave with asphalt pavement, on the designated foundation, the street above mentioned, and set and reset such curbstones, heading stones, etc., as may be necessary, all to the amounts as provided for on page four, and maintain the said pavement in good condition, to the satisfaction of the Commissioner of Highways, his successor or successors, for the period of 15 years from the final completion and acceptance thereof; all the said work to be done in the manner and under the conditions hereinafter specified."

The contractor further agreed:

"That in case a railroad company operating its lines on the street or streets mentioned in this contract should desire to make a contract with him for the paving of the space within and about its tracks, he will contract with them to do the work at a rate not greater than that charged for in this contract."

There was a clause under which the space occupied by crosswalks and railway rails was to be deducted from the measurement of the pavement. There also appeared the following important provisions:

"Relative to Repairs, Pavement Openings, etc.—(a) And the party of the second part hereby agrees that if, at any time during the period of 15 years after the work under this agreement shall have been accepted, on the whole work or any part thereof, any disintegration, cracks, bunches, holes or settlement of any depression in the pavement that shall measure more than three-eighths (⅜) inch from the under side of a straight edge four (4) feet long laid on the surface, shall in the opinion of the commissioner require repairs and the said commissioner shall notify the contractor to make the repairs required by a written notice to be served on the contractor, either personally or by leaving said notice at his residence or with his agent in charge of the work, the said ·contractor shall immediately commence and complete the same to the satisfaction of the said commissioner; and in case of failure or neglect on his part so to do within forty-eight hours from the date of the aforesaid notice, then the said commissioner shall have the right to purchase such materials as he shall deem necessary, and to employ such person or persons as he shall deem proper, and to undertake and complete said repairs and to charge the expense thereof against any sum of money due to the said contractor or retained by the said party of the first part as herein provided;

and the said contractor hereby stipulates and agrees to pay all such expense to which the said commissioner may have been put by reason of the neglect of the said contractor to make such repairs as aforesaid.

"(b) And it is hereby further agreed between the parties hereto, that if the termination of the said period of maintenance shall fall within the months of December, January, February or March, then and in that case, the said months of December, January, February and March, or such part thereof as the commissioner may determine, shall not be included in the computation of the said period of fifteen years during which the work is to be kept in repair by the contractor as aforesaid, and, also, in that case the payment to be made under the provisions of this contract shall not be made before the first of April next thereafter, unless otherwise specially permitted by the commissioner.

### "Temporary Repairs in Winter.

"(c) The contractor shall have the right, in the case of trenches, to provide against settlement by covering the surface of the cut with broken stones and maintaining the surface for six days, and during extreme winter weather any hole in the pavement may be filled and maintained with binder or asphalt mastic.

### "Contractor to Restore Pavement Over Water, Gas and Sewer Trenches.

"(d) The party of the second part further agrees that during said period of maintenance he will take up, lay and restore, upon forty-eight hours' notice the pavement over trenches made for laying water and gas pipes, sewers, or for other purposes permitted by the commissioner, and over breaks or injury, at the contract price per square yard in accordance with the terms of these specifications, except that in the case of fire burns or other surface injury, when the surface replaced shall be paid for at the uniform rate of two dollars per square yard; and when once so laid and restored, maintain the same in the same state of repair as agreed to for the other parts of the pavement. In restoring the pavement over openings made through a concrete foundation, the foundation replaced shall be in all cases six (6) inches in thickness and shall consist of one (1) part of Portland cement, three (3) parts of sand and five (5) parts of broken stone—all of the quality and mixture hereinbefore specified. He further agrees not to demand additional or further payment on account of injury or sinking of the pavement so laid and restored. In case the contractor fails to lay and restore the pavement as aforesaid, the commissioner shall, without further notice, procure labor and materials and lay and restore the pavement at the expense of the contractor.

### "Repairs Before Final Acceptance.

"(e) Just previous to the expiration of the guarantee period the entire work shall be inspected, and if any further cracks or disintegrations shall exist or any bunches, depressions or unevenness in the surface of the pavement shall show a variation of three-eighths ($\frac{3}{8}$) of an inch under a four (4) foot straight edge or template, or any portion of the pavement shall have a thickness of less than one and a half ($1\frac{1}{2}$) inches, such portion shall be immediately repaved upon the order of the commissioner, by the heater process or by removing the pavement from the foundation and replacing it in the same manner as when originally laid; provided, that when more than fifty (50) per cent. of the surface of any one block requires repairing according to the above conditions the entire block shall be taken up and relaid. Whenever any defects are caused by the failure of the foundation, the pavement including such foundation shall be taken up and relaid in accordance with the specifications.

"(f) And it is hereby further understood and agreed that the period of maintenance shall be in force through the term of years aforesaid, irrespective of any changes that may occur in traffic conditions, on or across said street, whether due to the widening of said roadway or to the construction, reconstruction or rearrangement of new or existing surface or subsurface constructions thereon, or to any other cause.

"Payments, When Made.

"Relative to Payments.—(a) And the said party of the second part further agrees that he will not be entitled to demand or receive payment for any portion of the aforesaid work or materials unless the same shall be fully completed in the manner set forth in this agreement, and such completion shall be duly certified by the engineer, inspector and chief engineer in charge of the work, and until each and every one of the stipulations hereinbefore mentioned are complied with, and the work completed to the satisfaction of the commissioner, and accepted by him; whereupon the party of the first part under ——— will pay, and hereby binds itself, and its successors to pay, to the said party of the second part, in cash, on or before the expiration of thirty (30) days from the date of the completion of the work and the acceptance of the same by the commissioner of highways, the whole of the moneys accruing to the said party of the second part, under this agreement, except thirty (30%) per cent. of the amount due for asphalt pavement complete, including binder and wearing surface, but exclusive of foundation, said thirty (30%) per cent. being retained as security for the maintenance of the pavement for a period of fifteen (15) years and to be paid to the said party of the second part under this agreement as follows: No payment, on account of said percentage retained, to be made until the expiration of the sixth year from the acceptance of the work by the commissioner of highways, when a payment of three (3) per cent. of the total cost of the asphalt pavement complete, that is, one tenth $(1/10)$ of the thirty (30) per cent. retained money shall be paid, and a like further sum of three (3) per cent. of the total amount at the expiration of each succeeding year thereafter, until the whole, or as much as may remain due of said contract price for asphalt pavement (exclusive of foundation) shall be paid, should the party of the first part perform the work stipulated under section 26 of this agreement.

"(b) And the party of the first part hereby agrees, upon the expiration of the said period of fifteen years, provided that the said work shall at that time be in good order or as soon thereafter as the said work shall have been put in good order to the satisfaction of the said commissioner, to pay to the said party of the second part the whole of the sum last aforesaid or such part thereof as may remain after the expenses of making the said repairs in the manner aforesaid shall have been paid therefrom.

"28. Prices.—(a) And the said party of the second part hereby further agrees to receive the following prices as full compensation for furnishing all the materials and performing all the labor which may be required in the prosecution of the whole of said work to be done under this agreement and in all respects performing and completing the same, to wit:

"For completed asphalt pavement, per square yard, the sum of four and $79/100$ dollars ($4.79).

"For relaying old stone pavement, per square yard, the sum of fifty-eight cents (58c).

"For concrete foundation, per cubic yard, the sum of five and $60/100$ dollars ($5.60).

"For furnishing and setting new curbstones, per linear foot, the sum of eighty-seven cents (87c).

"For redressing, rejoining and resetting old curbstones, per linear foot, the sum of thirty-three cents (33c).

"For noiseless covers and curbs for water manholes, furnished and set, per manhole, the sum of twenty-one and $50/100$ dollars ($21.50).

"For noiseless covers and curbs for sewer manholes, furnished and set, per manhole, the sum of twenty-one and $50/100$ dollars ($21.50).

"It being expressly understood that the measurement shall be taken after the laying and setting of the pavement, and the completion of the work, and that the aforesaid prices cover the furnishing of all the different materials and all the labor; the maintaining of said pavement in good order as often as may be required by the terms thereof, or as the said commissioner shall direct, for the period of 15 years and the performance of all the work mentioned in this specification and agreement."

With the consent of the city this contract was assigned to the plaintiff, which proceeded with the work required to be done thereunder, including the space between the railroad tracks (14 feet 2 inches) and 2 feet either side of the tracks, in all 18 feet 2 inches. The width of the highway varied from 39 to 65 feet. The final certificate was made January 29, 1901, under which the amount earned by plaintiff was fixed at $280,146.16, whereof the amount for new pavement was $240,-616.64, and the retained percentage on the latter sum amounted to $72,184.99. The period of maintenance still has over five years to run, and the first payment of 3 per cent. out of the retained percentage was ordered made on January 30, 1907, under the terms of the contract, by which the first return of 3 per cent. out of the retained 30 per cent. was to be made at the expiration of the sixth year after the acceptance of the work by the commissioner of highways. When this action was brought, the sum of $57,748.01 was claimed to be still retained by the city as security for the performance of the maintenance contract. Permits for repairs had been issued by the city of New York, through the commissioner of public works and the borough president for the year 1902 and through the borough president for the years 1903, 1904, and 1906, authorizing the Metropolitan Street Railroad Company to "take up the pavement and excavate such portions as may be necessary of the highway along the lines of its present railways and of railways leased or controlled by it in the borough of Manhattan for the purpose of restoring the pavements which are in bad condition and of repairing defective tracks but not for any other purpose whatever." It further provided:

"Whenever it is necessary to open any asphalt pavement, the company shall send notice at once to this office of the location of such opening and also notice to the asphalt company having the contract for the maintenance of the pavement, and shall see that the asphalt company restores the pavement as promptly as possible; the work to be done at the expense of the railroad company."

These permits were for ordinary maintenance repairs to pavement and tracks, and to provide for cases of accident or sudden emergency. The liability of the company for repairing the space within its tracks and for two feet on either side thereof was determined by section 98 of the railroad law (Laws 1890, c. 565), as amended by Laws 1892, c. 676, which throughout the period of maintenance has read as follows:

"Every street surface railroad corporation, so long as it shall continue to use any of its tracks in any street, avenue or public place in any city or village shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe. In case of the neglect of any corporation to make pavements or repairs, after the expiration of thirty days' notice to do so, the local authorities may make the same at the expense of such corporation, and such authorities may make such reasonable regulations and ordinances as to the rate of speed, mode of use of tracks, and removal of ice and snow, as the interests or convenience of the public may require. A corporation whose agents or servants willfully or negligently violate such an ordinance or regulation, shall be liable to such city or village for a penalty not exceeding $500, to be specified in such ordinance or regulation."

On August 25, 1908, the city of New York through the borough president of Manhattan granted a permit to the railroad company whereof so much as is relative to the issue is in the following terms:

"Permission is hereby given to the Metropolitan Railway Company to take up the pavement and excavate such portions as may be necessary of Broadway from Canal street to Forty-Second street for the purpose of renewing the tram rail and slot on this portion of Broadway, the rail to be used in such renewal to be of the same dimensions and style as that now in place, upon the following special conditions: That the company shall restore the pavement in accordance with the contracts and specifications of the following companies: The Barber Asphalt Paving Company, Broadway from Canal to Fourteenth street, dated July 29, 1901, Mack Paving Company, Broadway from Fourteenth to Forty-Second street, dated July 23, 1900 (with the exception of Broadway, N. S. of Twenty-Third to the N. S. of Twenty-Fifth street, Barber Asphalt Paving Company, dated October 23, 1907). That the company shall restore the pavement at its own cost and expense and to the satisfaction of the president of the borough of Manhattan."

The railroad company thereupon had this work done at its expense by the Sicilian Asphalt Company. Thereafter the plaintiff caused to be sent the following notice of its election to treat this permit as a breach of the contract with the city, authorizing a rescission thereof:

"Mack Paving Company of New York, 30 Church St.

"New York, Sept. 21st, 1908.

"Hon. John F. Ahearn, President, Bor. of Manhattan—Sir: The undersigned, as assignee of the National Asphalt Company, is the contractor with the city of New York under contract dated July 23, 1900, for regulating and repaving with asphalt pavement on the foundation of present pavement, the roadway of Broadway from Fourteenth to Forty-Second street, in the city of New York.

"This contract contains a covenant giving to the undersigned the sole right to take up, lay and restore upon forty-eight hours' notice, the pavement over trenches made for laying water and gas pipes, sewers or for other purposes permitted by the commissioner and other breaks or injury at the contract prices per square yard in accordance with the terms of the specifications of that contract, * * * and when once so laid and restored to maintain the same in the same state of repair as agreed to for the other parts of the pavement.

"The contract also contains other provisions fixing the prices for the different classes of work and provides for maintenance for a term of fifteen years. The contract, so far as the original performance of the work is concerned, has been entirely completed and accepted. Certain portions of the amounts earned thereunder, however, have been retained by the city of New York under the terms of said contract and have not yet been paid to us. We are now informed that, acting under a permit from your department, other parties with your acquiescence and consent are engaged in carrying on and performing a large portion of the work for which you have contracted with us as aforesaid and the performance of which was a material part of the entire consideration for our contract.

"When we first learned of this violation of the said contract on your part, we verbally protested and objected thereto. Now, to avoid any possible misunderstanding in the matter, we hereby in writing, notify you that we repeat the objection and protest heretofore made against the said action above referred to upon your part and shall claim and insist that the same is a violation of the covenants contained in said contract, and that we elect to treat your illegal action as a breach of contract as aforesaid and hereby claim the immediate payment of the moneys earned and retained and the further damages to which we are entitled therefor resulting from said breach.

"Respectfully yours,        Mack Paving Company of New York,
                "By A. W. Sewall, Vice President."

The theory upon which plaintiff seeks to escape from its liability to maintain in proper condition the paving laid by it, for a period of some five years still required by the contract, is that it was justified in rescinding the contract by reason of the breach of some covenant upon the part of the city by which plaintiff was to have the exclusive right to make all repairs to the paving of the highway in question for the full period of the contract, and that the measure of plaintiff's damage by reason of the breach was at least equal to the amount of the retained percentage. We can find no such provision therein. The maintenance of the pavement (as distinct from repairs) was an undertaking by plaintiff which formed part of the consideration for the price paid by the defendant for the entire work. It was an essential part of the entire work contracted to be performed by plaintiff, and its liability therefor did not terminate until the period of maintenance had expired. The repair work is a distinct and separate item, having no relation whatever to the original work contracted to be done or to the retained percentage. It is a clause obviously inserted for the benefit of the city to enable it to procure the immediate repairing (upon giving the notice required) of breaks or injury not covered by the maintenance clause, and the taking up, laying, and restoring of the pavement over trenches, for water and gas pipes, sewers, or other purposes, at the same rate per square yard as the contract price, and the replacing the surface in case of superficial injury at a lower rate. By this it was intended to enable the city to secure the speedy restoration of any surface damaged or temporarily interfered with for public uses. This constitutes no covenant upon the part of the city to grant an exclusive right to the contractor to make such repairs, but is an agreement upon the part of the contractor that he will make such repairs as he is called upon by the city to make, upon receiving 48 hours' notice, and the only agreement which the city makes is to pay for repairs thus made upon notice, at the rate fixed by the contract.

Under the decision in O'Keeffe v. City of New York, 173 N. Y. 474, 66 N. E. 194, there can be no doubt that there was not even an absolute duty on the part of the contractor to make all repairs, but only a qualified one to make such repairs as it might be given the requisite notice to do, for otherwise the requirement for notice would be superfluous. Therefore the contractor could neither make repairs nor be held for a failure so to do, until the notice had been given. In regard to the relaying of the pavement in question by the Sicilian Asphalt Company, it was done under the orders of the railroad company which, as heretofore shown, was under the railroad law required to keep the space thus relaid in permanent repair. The contractor agreed by its contract that, in case the railroad company should desire to make a contract with it for the paving of the space within and about its tracks, the contractor would contract to do the work at a rate not greater than that fixed by the contract; but this did not bind the railroad company, which was not a party to the contract, to give such work to the contractor, nor did it bind the city, which was not chargeable with the doing of such work, to pay any one therefor. Of course the city never gave any notice to do the work in question. It is dif-

ficult in any event, even if the city had made such a covenant, to see how plaintiff could have recovered more than the profit it lost on the work thus done by another, or how it could have rescinded its contract so as to be released from its absolutely binding agreement to maintain for a fixed period and to allow a sum to be retained as security for the performance of that agreement. In this case, there being no covenant by which plaintiff had an exclusive right to repair or relay, and of course no breach of the contract, no cause of action had been made out by plaintiff, and the complaint should have been dismissed.

The contention has also been made that, plaintiff having failed to give any proof in support of its allegation of the filing of a notice of claim with the comptroller, the complaint should have been dismissed upon that ground. Under section 261 of the Greater New York Charter it was provided that no action for any cause whatever should be maintained against the city of New York unless it should appear by, and be an allegation of, the complaint that at least 30 days had elapsed since the demand, claim, or claims upon which the action was founded had been presented to the comptroller of the said city for adjustment, and that he had neglected or refused to make an adjustment or payment thereof for 30 days after such presentment. It has been held that compliance with this section of the charter is in the nature of a condition precedent, and that it must be both alleged and proved, for the failure to prove it prevents a recovery. Smith v. City of New York, 88 App. Div. 606, 85 N. Y. Supp. 150. There having been no proof offered herein, the question is presented whether any issue as to the allegation of presentation of claim was raised by the answer, for the plaintiff takes the position that the answer was insufficient to raise such an issue, and therefore no proof on this point was required. The allegation of the complaint is as follows:

"Eighteenth. That heretofore and more than 30 days prior to the commencement of this action the claim sued on herein was duly presented to the comptroller of the city of New York for settlement and adjustment, and payment thereof duly demanded; but, notwithstanding such presentation and demand, no part of said claim has been paid."

So much of the answer as refers to this paragraph of the complaint is contained in the following paragraph:

"(1) It denies that it has any knowledge or information sufficient to form a belief as to any of the allegations of said complaint contained in the paragraphs or subdivisions thereof marked 'First,' 'Third,' 'Fourth,' 'Fifth,' 'Sixth,' 'Seventh,' 'Eighth,' 'Ninth,' 'Tenth,' 'Eleventh,' 'Twelfth,' 'Thirteenth,' 'Fourteenth,' 'Fifteenth,' 'Sixteenth,' and 'Eighteenth.' "

In Smith v. City of New York, supra, an answer containing the statement that defendant "has no knowledge or information sufficient to form a belief as to the truth of each and every allegation in said complaint contained not hereinbefore specifically admitted" (the sole admission being that defendant was a municipal corporation) was deemed sufficient to raise the issue; the complaint having been dismissed upon that ground. It is true that in Purdy v. City of New York, 126 App. Div. 324, 110 N. Y. Supp. 822, and Borough Con-

struction Company v. City of New York, 131 App. Div. 278, 115 N. Y. Supp. 697, it was expressly held by another department that such a denial was frivolous, for the defendant in presumption of law had full knowledge of the filing of the claim and of its contents and was not permitted to resort to what was termed "the lenient form of denial which it used." But both these cases were reversed in the Court of Appeals (Purdy v. City of New York, 193 N. Y. 521, 86 N. E. 560; Borough Construction Co. v. City of New York, 200 N. Y. 149, 93 N. E. 480), though upon grounds which rendered unnecessary the review of the question just referred to. In City of New York v. Matthews, 180 N. Y. 41, 72 N. E. 629, it was held that such a denial was frivolous when made by an individual defendant, denying knowledge or information sufficient to form a belief as to matters of public record, open by law to public inspection and with knowledge of which the defendant was chargeable by law. But in City of New York v. Halsey, 132 App. Div. 192, 116 N. Y. Supp. 947, it was held by this court that this did not mean that in no case can a party put in issue an allegation as to a matter of public record by a denial framed in the language of section 500, Code Civ. Proc. "It cannot be," it was there said, "that in every case a party is called upon to inspect the public records before answering and must admit or positively deny an allegation concerning the same." In the case at bar the allegation is, not that a certain paper was placed on file in the comptroller's office and still remains there, but that "the claim sued on herein was duly presented to the comptroller of the city of New York," and that raises questions quite apart from its mere presence upon the files. The claim might have been defective or invalid, and under the decision in Purdy v. City of New York, 193 N. Y. 521, 86 N. E. 560, its retention by the city authorities without objection as to its sufficiency would constitute no waiver on its part of the right to rely upon the defects in the notice as a defense to the action. To the same effect was Forsythe v. City of Oswego, 191 N. Y. 441, 84 N. E. 392, 123 Am. St. Rep. 605. In the present case even had the plaintiff otherwise made out a case, it failed to prove the presentation of its claim as required by the charter, an issue as to which had been properly presented by the answer.

The judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.