ASPHALT PAVING & CONTRACTING CO. v. CITY OF NEW YORK.
(No. 2.)

(Supreme Court, Appellate Division, First Department. March 22, 1912.)

1. MUNICIPAL CORPORATIONS (§ 368*)—STREET PAVING CONTRACT—NOTICE TO REPAIR.

A paving contract between a city and a corporation required the contractor to keep the pavement in repair for 15 years from its completion, and provided that notice to make repairs should be served on the contractor either personally, or by leaving it at its residence or with its agent in charge of the work. Before the expiration of the 15 years, the corporation was dissolved, and another paving company was appointed its agent to keep the pavement in repair, so that the original company might collect the entire contract price, part of which had been retained by the city as security. *Held,* that written notice to the agent demanding that it, as a principal, repair the pavement, and not specifying that its liability was because of its agency, was insufficient to put the contractor in default· it not appearing that either the contractor or the agent misled the city officials into believing that the agent was the assignee or successor in interest of the original contractor, and hence the city could not deduct the cost of repairs made by it from the amount due the contractor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. § 368.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MUNICIPAL CORPORATIONS (§ 368*)—STREET PAVING CONTRACT—NOTICE TO· REPAIR PAVEMENT.

Where a paving contract provided that notice to make repairs should be served on the contractor, the giving of such notice is a condition precedent to the contractor's liability for failure to make repairs.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. § 368.*]

3. CORPORATIONS (§ 618*)—DISSOLUTION—ASSIGNMENTS AFTER DISSOLUTION.

After the voluntary dissolution of a paving company to which a city was indebted, its vice president, with the consent of the directors, executed under seal an assignment of its rights against the city to another. *Held*, that such assignment, being under seal and under the order of the directors, was valid, for Stock Corporation Law (Laws 1890, c. 564, § 57) as amended and re-enacted in General Corporation Law (Consol. Laws 1909, c. 23, § 221, subd. 3), which was in force at the time of the dissolution, provides that a dissolved corporation shall nevertheless continue in existence for the purpose of collecting its assets, and may sue and be sued for the purpose of enforcing such debts or obligations until its affairs are fully adjusted.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2457, 2458; Dec. Dig. § 618.*]

Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Asphalt Paving & Contracting Company against the City of New York. From a judgment for defendant and an order denying its motion for a new trial (69 Misc. Rep. 588, 127 N. Y. Supp. 794) plaintiff appeals. Reversed and remanded.

See, also, 134 N. Y. Supp. 427.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

L. Laflin Kellogg, for appellant.
Terence Farley, for respondent.

DOWLING, J. [1] On June 24, 1896, a contract in writing was executed between the mayor, aldermen, and commonalty of the city of New York, parties of the first part, and the Warren-Scharf Asphalt Paving Company, party of the second part, for the regulating and paving with asphalt pavement, on the then existing pavement, of the carriageway of First avenue, from 20th street to 109th street (with certain exceptions) in the city of New York. The contractor, in consideration of the price to be paid it for the work, agreed, among other things, that it would "maintain the said work in good condition, to the satisfaction of the commissioner of public works, his successor or successors, for the period of 15 years from the final completion and acceptance thereof." Among the provisions of the contract was the following:

"Security to be Retained for Repairs.

"14a. And it is further agreed that if, at any time during the period of fifteen years from the date of the acceptance by said commissioner of the whole work under this agreement, the said work, or any part or parts thereof, in the opinion of said commissioner, require repairs or sanding, as provided for in section 8, or the surface of the pavement shall have any cracks, bunches, holes or depressions that shall measure more than ½ inch from the under side of a straight edge 4 feet long laid on the surface, and the said,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

commissioner shall notify the said party of the second part to make the repairs or do the sanding as required, by a written notice to be served on the contractor either personally or by leaving said notice at his residence or with any of his agents in charge of the work, or employés found on the work, the said party of the second part shall immediately commence and complete the same to the satisfaction of said commissioner; and in case of failure or neglect on his part so to do within twenty-four hours from the date of the service of the aforesaid notice, then the said commissioner of public works shall have the right to purchase such materials as he shall deem necessary, and to employ such person or persons as he may deem proper, and to undertake and complete the said repairs or sanding, and to pay the expense thereof out of any sum of money due the contractor, or retained by the said party of the first part, as hereinafter mentioned. And the parties of the first part hereby agree, upon the expiration of the said period of fifteen years, provided that the said work shall at that time be in good order, or as soon thereafter as the said work shall have been put in good order, to the satisfaction of the said commissioner, to pay to the said party of the second part the whole of the sum last aforesaid or such part thereof as may remain after the expenses of making the said repairs in the manner aforesaid shall have been paid therefrom." The amount withheld by the city to protect itself against default by the contractor in his agreement to keep the work in repair was fixed by the following paragraphs of the contract: * * *

"Payments, When Made.

"23. And the said party of the second part further agrees that he shall not be entitled to demand or receive payment for any portion of the aforesaid work or materials until the same shall be fully completed in the manner set forth in this agreement, and such completion shall be duly certified by the engineer, inspector and water surveyor in charge of the work, and until each and every of the stipulations hereinbefore mentioned are complied with, and the work completed to the satisfaction of the commissioner of public works, and accepted by him; whereupon the parties of the first part, under chapter 475, Laws of 1895, will pay, and hereby bind themselves and their successors to pay, to the said party of the second part, in cash, on or before the expiration of thirty days from the time of the completion of the work and the acceptance of the same by the commissioner of public works, seventy per cent. of the whole of the moneys accruing to the said party of the second part under this agreement, and the balance of the moneys that may be due to said party of the second part under this agreement, as follows: Three per cent. of the whole amount of money accruing to said party of the second part on the expiration of the sixth year, and a like further sum of three per cent. at the expiration of each succeeding year thereafter until the whole or as much as may remain due of said contract price shall be paid, should the party of the first part perform the work stipulated under section (14a) of this agreement."

The Warren-Scharf Asphalt Paving Company entered upon the performance of its contract and obtained its final certificate from the appropriate city officials August 30, 1897, from which it appears that the amount retained as security for the making of repairs under the section last quoted was $90,835.98. The first of the annual payments required by the contract to be made to the contractor on account of this retained percentage became due August 30, 1903, and payments of $9,083.59 were so made to the contractor on that date and on August 30, 1904, August 30, 1905, August 30, 1906, and August 30, 1907. On May 10, 1904, the Warren-Scharf Asphalt Paving Company executed its power of attorney in writing to James L. Brusstar, authorizing him to receive and receipt for any and all moneys becoming due to it under the contract in question. Thereafter, the corporation having been organized under the laws of the state of New York, went through the proceedings required by section 57 of the

(then) Stock Corporation Law (Laws 1890, c. 564), and was voluntarily dissolved on June 11, 1904. Brusstar continued to receive the payments from the city on account of the retained percentage, acting as attorney for the corporation. On May 28, 1908, the president of the borough of Manhattan wrote two letters to the Barber Asphalt Paving Company, one of which, that relating to certain paving covered by the maintenance clause in the contracts between the city of New York and the Atlantic Alcatraz Asphalt Company, is in the record on appeal in action No. 1 between the parties to this action, argued herewith (134 N. Y. Supp. 442), but the second letter is not in the record on the present appeal. It may be assumed to be similar to the first letter referred to, which was a demand that the Barber Company commence the work of repairing the asphalt pavement, pursuant to the terms of the contracts, within 48 hours, in default whereof the city would have the work done at the contractor's expense; the notice being given to the Barber Company as "assignee or successor in interest under said contracts." This assumption is justified by the tenor of the notice given by the city on June 10, 1908, hereinafter quoted. Replying to these two letters, the following letter was sent:

"June 3, 1908.

"Hon. John F. Ahearn, President of the Borough of Manhattan, City Hall, New York City—Dear Sir: Your two letters of May 28, 1908, regarding contracts made between the city of New York and the Atlantic Alcatraz Asphalt Company and the contracts made with the Warren-Scharf Asphalt Paving Company, are at hand. We beg to advise you that we recognize no liability to the city of New York attempted to be enforced by the said notices.

"Yours very truly,          Barber Asphalt Paving Company,
                              "J. L. Brusstar, District Manager."

On June 10, 1908, the city of New York caused the following notice to be given, which was served on James L. Brusstar, described as district manager of the Barber Asphalt Paving Company, being the same person who had previously acted as attorney for the Warren-Scharf Asphalt Paving Company:

"The City of New York.

"Office of the President of the Borough of Manhattan, City Hall.
                              "New York, June 10, 1908.

"To the Barber Asphalt Paving Company—Gentlemen: It has been certified to me by the engineer of the bureau of highways that the asphalt pavement at the location or locations designated herein below is need of immediate repair.

"Said location or locations are at

| First Avenue from | 20th to 26th Street. |
| " " " | 35th to 36th Street. |
| " " " | 36th to 49th Street. |
| " " " | 51st to 54th Street. |
| " " " | 56th to 60th Street. |
| " " " | 61st to 72d Street. |
| " " " | 74th to 83d Street. |
| " " " | 84th to 85th Street. |
| " " " | 86th to 91st Street. |
| " " " | 92d to 109th Street. |

"In the borough of Manhattan. Each of the locations is covered by the maintenance clause in the contract between the city of New York and the

Warren-Scharf Asphalt Paving Company, dated June 24, 1896 and on file in the office of the comptroller of the city of New York, of which last-named corporation you are the assignee or successor in interest under said contracts. You are therefore notified, pursuant to the terms of said contract, to commence within forty-eight (48) hours from the date of the service of this notice, the work of repairing the asphalt pavement at the designated location or locations. Should you fail or neglect to comply with the terms of this notice within the time specified herein, I shall issue an order to another asphalt company to perform the work and the expense thereof will be charged and met in the manner provided by the terms of the said contract for the work described, and action will be brought against you to recover the necessary expense of such work.

"John F. Ahearn,    President of the Borough of Manhattan."

With this notice no compliance was ever had, nor was the work thereby required to be done ever performed by the Barber Company, by the contractor, or by any one on behalf of either. This action is brought by plaintiff, under an assignment by the Warren-Scharf Asphalt Paving Company to it, dated June 30, 1908, to recover the sum of $9,083.59, the amount of the retained percentage which the contractor would have been entitled to recover on August 30, 1908, had it complied with the terms of the contract and kept the pavement in repair, after receiving notice so to do. The failure to do so is sought to be justified upon the ground that the notice required to be given to the contractor under the contract was never in fact given, and that therefore it never was in default. The learned trial court submitted to the jury as the sole issue for their consideration:

"Was the Barber Asphalt Company the agent of the Warren-Scharf Company in charge of the work of repairs under this contract on First avenue at the time of the notice defendant's Exhibit C was served on the manager of the Barber Asphalt Company on June 10, 1908?"

And in connection therewith charged the jury:

"That if they find the Barber Company was the agent of that company at that time then this was a sufficient notice to make repairs, and that if it was such a notice plaintiff is not entitled to recover in this action."

The jury brought in a verdict for defendant. Thereafter, upon a motion for a new trial, the questions involved were discussed by the court in an opinion denying such motion. In our opinion there was sufficient evidence to warrant the finding of the jury that the Barber Company was the agent of the Warren-Scharf Company in charge of the repair work on First avenue. But it is unnecessary to analyze the evidence supporting such finding, for the reason that, even granting that fact as proven, the notice itself was insufficient to charge the Warren-Scharf Company with any liability for the failure to make the repairs. It will be remarked that the notice given by the city is not a notice given to the Barber Company as agent, nor to the Warren-Scharf Company as principal. It is a notice given directly to the Barber Company as principal calling upon *it* to do the work of repair, pursuant to the terms of the contract, and that in case of *its* failure to do the work, the city would cause it to be done at *its* expense. Not only is this so, but the city gives this notice to the Barber Company directly because it is claimed to be "the assignee or successor in interest under said contract." Every part of the notice contradicts

any claim that it was given to the agent of the Warren-Scharf Company for the purpose of notifying the latter that it was called upon to do the repairing under the contract. Every part of the notice is consistent with the theory that the city officials thought the Barber Company was the principal with whom they had to deal and acted accordingly. The fact, therefore, that the notice was served upon the agent in charge of the work, would not make it effective, when it did not call upon the contractor to make the repairs, but upon a third party whom it claimed to be under a duty to make them. No proper notice therefore was ever given which operated to put the contractor in default. Nor does the fact that the city officials were misled into the belief that the Barber Company was actually the assignee, or successor in interest, of the contractor, change the situation, for it was unable to prove either the sending or receipt of the letter claimed to contain the misleading information, and therefore could not prove that either the Barber Company or the contractor was responsible for the false impression created.

[2] The giving of the notice to make the repairs is a condition precedent to the contractor's liability. O'Keefe v. City of New York, 173 N. Y. 474, 66 N. E. 194; Mack Paving Company v. City of New York, 142 App. Div. 702, 127 N. Y. Supp. 738. No proper notice having been given, the contractor never became liable for a default in failing to make the repairs.

[3] It is also urged on behalf of defendant that plaintiff cannot recover because the assignment to it was invalid. One of the grounds assigned for the motion to dismiss the complaint upon the trial was:

"That the plaintiffs have not shown a valid assignment duly executed by an officer having authority to execute the same."

This ground does not appear to have been urged with much force, and is not referred to in the opinion of the court upon the motion for a new trial. The assignment itself was received in evidence without objection. It recites that, in consideration of one dollar and other good and valuable considerations, the receipt whereof is acknowledged, the Warren-Scharf Asphalt Paving Company assigns, transfers, and sets over unto the plaintiff all moneys due, or to grow due, as reserved or retained percentage from the city of New York under the contract in question. It contains a further clause authorizing the assignee to take appropriate action to recover the amount in question, and to receipt therefor. It closes, "In witness whereof the Warren-Scharf Asphalt Paving Company has caused these presents to be signed by its vice president and its corporate seal to be hereunto affixed this 30th day of June, 1908," and is signed, "The Warren-Scharf Asphalt Paving Company, by E. E. Riter, Vice President. Attest. C. W. Wells, Sec'y. [Corporate Seal.]". It was duly acknowledged before a notary public on behalf of the corporation by E. E. Riter, the vice president, who deposed as to his official position therein, as to his knowledge of the corporate seal, and that it was the one affixed to the instrument, and that "it was so affixed by order of the board of directors of said corporation and that he signed his name thereto by like order."

It is claimed on behalf of defendant that, this assignment having been executed some four years after the voluntary dissolution of the corporation, it is void and transferred no interest whatever to plaintiff.   Replying to this, plaintiff shows that the assignment is under seal, that it acknowledges the receipt of a good and valuable consideration, and that it complies with every requisite to entitle its receipt in evidence.   Further, that it shows upon its face that it was executed by the authority of the board of directors of the corporation, who, under the statute, after voluntary dissolution are trustees of its assets, and that the life of the corporation is continued to the extent of permitting it, in its corporate name, among other things, to collect its assets and doing all things required to wind up its business and affairs.   The authority for this is to be found in the General Corporation Law, § 221, subd. 3:

"Said corporation shall nevertheless continue in existence for the purpose of paying, satisfying, and discharging any existing debts or obligations, collecting and distributing its assets and doing all other acts required in order to adjust and wind up its business and affairs, and may sue and be sued for the purpose of enforcing such debts or obligations, until its business and affairs are fully adjusted and wound up."

This language is identical with that used in section 57 of the former Stock Corporation Law (Laws 1890, c. 564).   So far is the corporate life maintained even after dissolution that this court has held that, in the case of a tort committed against a plaintiff during the lifetime of the corporation, his action therefor, commenced after the voluntary dissolution of the corporation, must be brought against the corporation itself and not against its former directors or trustees.   Cunningham v. Glauber, 133 App. Div. 10, 117 N. Y. Supp. 866.   Upon all the facts herein, we find no ground on which defendant has successfully attacked the validity of this assignment.

The judgment and order appealed from must therefore be reversed, and a new trial ordered, with costs to appellant to abide the event.

INGRAHAM, P. J., and McLAUGHLIN and MILLER, JJ., concur.

LAUGHLIN, J. (dissenting).   I dissent on· the opinion of Mr. Justice Foote at Trial Term on motion to set aside the verdict and for a new trial.