S. WALLACE HAGAMAN, Appellant, *v.* CITY OF ROCHESTER, Respondent. (Harrison Street.)

S. WALLACE HAGAMAN, Appellant, *v.* CITY OF ROCHESTER, Respondent. (Merrimac Street.)

Fourth Department, November 20, 1918.

Municipal corporations — contracts for paving construed — action against city for money retained as security for fulfillment of covenants of contractors to maintain and repair pavements — sufficiency of notices requiring contractors to repair — compliance with method of service of notice condition precedent to right of city to make repairs at expense of contractors — sufficiency of notice by letter addressed to an individual member of firm.

Where in actions by the transferee of certain funds representing moneys earned by contractors for the construction of pavements and retained by the authorities of the defendant city as security for the fulfillment of the covenants of the contractors to maintain and keep in repair the pavements

for the period of ten years, that period having expired, the defendant alleged that the right to the funds had been abandoned and that the moneys, except a small amount which had been paid to the plaintiff, had been applied to the payment of expenses incurred by the defendant in the work of the maintenance of the pavements made necessary by the default of the contractors, and under the provisions of the contracts the contractors could only be put in default for failure to make repairs by neglect to make them after written notices by the commissioner of public works were served upon them, either personally or by leaving the same at their places of business or residences or with their agents in charge of the work, it was error for the court to instruct the jury that even though no notices were given of the need of repairs to the pavements, and no notices were given requiring the contractors to repair the same, still by the terms of the contracts the contractors were required to keep the pavements in repair so that if repairs were needed and not made by the contractors, but were made by the city authorities or under their direction, the expenses of such repairs could be taken from the guaranty funds.

It was also error for the court to permit the jury to find that letters mailed to the contractors if received by those to whom they were addressed, constituted a substantial compliance with the contract for the service of notices requiring repairs, as the members of the firms of contractors were men well known in the defendant city and could at all times easily have been found.

The letter and spirit of the contract required strict adherence to the prescribed method of the service of notices, and such method was a condition precedent to the right of the city to make repairs at the expense of the contractors.

Letters calling for repairs to a pavement addressed to a member of the contracting firm, individually, even though served personally, would not be sufficient under the contract to put the firm in default.

KRUSE, P. J., and FOOTE, J., dissented in memorandum.

APPEAL in each case by the plaintiff, S. Wallace Hagaman, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 28th day of February, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying plaintiff's motion for a new trial in each case made upon the minutes.

*Hugh J. O'Brien,* for the appellant.

*Benjamin B. Cunningham, Corporation Counsel* [*Charles L. Pierce, Deputy Corporation Counsel,* of counsel], for the respondent.

DE ANGELIS, J.:

These actions were tried together and the record before us is contained in one appeal book. They were brought by the transferee of certain funds representing moneys earned by the contractors for the construction of pavements and retained by the authorities of the defendant as security for the fulfillment of the covenants of the contractors to maintain and keep in repair the pavements for the period of ten years, that period having expired. The defenses were that the right to the funds had been abandoned and that the moneys of the funds, except a small amount which had been paid to the plaintiff, had been applied in payment of the expenses incurred by the defendant in the work of the maintenance of the pavements made necessary by the default of the contractors.

On the 10th day of August, 1905, George W. Hagaman & Co., a copartnership doing business in the city of Rochester, composed of George W. Hagaman, Roscoe C. Hagaman and John C. Miller, entered into a contract with the city of Rochester to construct a brick pavement in Harrison street, to complete the same on or before December 1, 1905, and to maintain and keep the pavement in good repair at their own expense for the term of ten years from the date of the final acceptance of the work, such maintenance and repairs to be performed faithfully and promptly at all times when required by the commissioner of public works of the city. By the terms of such contract the city of Rochester, the defendant, retained ten per cent of the money due the contractors for the item of brick pavement as determined by the final estimate, as security for so maintaining the pavement and performing such repairs. The sum so retained was to be invested in securities or deposited for the benefit of the contractors, the interest to be regularly paid them if the terms of the agreement were being fulfilled. The work was completed and the final estimate made on the 30th day of October, 1905, and the sum retained by the city was $602.49. On the 1st day of February, 1906, this sum was deposited in the Genesee Valley Trust Company under a certificate of deposit in the name of L. M. Otis, trustee.

On the 18th day of July, 1906, Hagaman, Miller & Hagaman, a copartnership of the city of Rochester, composed of George W. Hagaman, Roscoe C. Hagaman and John C. Miller, entered

into a like contract with the city of Rochester to construct a brick pavement in Merrimac street to be completed on or before December 1, 1906, and to maintain and keep the pavement in good repair at their own expense for the term of ten years from the date of the final acceptance of the work under precisely the same conditions as those contained in the contract for the pavement of Harrison street. The sum retained was $1,100.71, which was thereafter deposited in the Genesee Valley Trust Company at four per cent in the name of L. M. Otis, trustee of Hagaman, Miller & Hagaman. The final estimate was made November 26, 1906.

At some time between August 10, 1905, and July 18, 1906, the firm of George W. Hagaman & Co. was succeeded by the copartnership of Hagaman, Miller & Hagaman above referred to.

In the year 1909 the copartnership of Hagaman, Miller & Hagaman was succeeded by a corporation known as Hagaman, Miller & Hagaman Company. Roscoe C. Hagaman was made the president of the corporation and its stockholders were George W. Hagaman, Roscoe C. Hagaman and John C. Miller. Upon the formation of the corporation the interest of the copartnerships in such security funds was transferred to the corporation.

On the 12th day of September, 1911, the corporation went into bankruptcy and William T. Plumb was appointed trustee of its property.

On the 22d day of November, 1911, the corporation, by written assignment, transferred the interest in such security funds to S. Wallace Hagaman, the plaintiff, and on that day the assignment was filed with the city comptroller.

On or about the 9th day of January, 1912, the trustee in bankruptcy filed with the treasurer of the city of Rochester a written notice addressed to him in which such trustee made the claim that the assignment of November 22, 1911, of such interest in the security funds was void as against the creditors of the bankrupt and notified the city not to pay any of the moneys covered thereby to the plaintiff.

On or about the 29th day of November, 1912, an agreement was made and entered into between the plaintiff and the trustee in bankruptcy whereby the trustee in bankruptcy

released to the plaintiff all his interest as such trustee in the security funds and a copy of such agreement was delivered to the corporation counsel of the defendant and delivered by him to its treasurer shortly thereafter.

Between the 7th and the 29th days of July, 1914, William Bailey & Co., contractors, made repairs for the city of Rochester to the Merrimac street pavement of the value of $865.93.

Between the 14th day of September and the 5th day of October, 1914, William Bailey & Co. made repairs to the Harrison street pavement for the city of Rochester of the value of $752.96.

On the 22d day of September, 1914, $865.93 of the security fund for the maintenance of the Merrimac street pavement was deposited in the local improvement guaranty account of the city and the claim of William Bailey & Co. for repairs to the Merrimac street pavement was paid therewith. On the 8th day of December, 1916, $234.78 of such fund was paid to and receipted for by the plaintiff.

On the 15th day of January, 1915, the security fund for the maintenance of the Harrison street pavement was drawn and deposited in the local improvement guaranty account of the city. Thereupon these moneys were applied on the account of William Bailey & Co. for repairs to Harrison street.

On the 24th day of September, 1912, the deputy commissioner of public works of the city of Rochester addressed a letter to Hagaman, Miller & Hagaman, in which he called their attention to the need of repairs to the Merrimac street pavement and directed them to give the matter immediate attention, and on the 8th day of October, 1912, on the 31st day of January, 1913, and on the 18th day of April, 1913, the commissioner of public works of the city addressed like letters respectively to Hagaman, Miller & Hagaman.

On the 27th day of July and on the 9th day of September, 1914, the commissioner of public works addressed letters to George W. Hagaman in which he called his attention to the need of repairs to the Harrison street pavement and directed him to give the matter immediate attention.

There was evidence upon which the trial court permitted the jury to find that these letters were mailed to and received by those addressed. Although in some respects it is slight, I

think that the evidence is sufficient to sustain the finding of the jury that these letters were received by those to whom they were addressed.

We need now to examine more carefully those provisions in the contracts for the maintenance of the pavements during the ten-year periods. These are the provisions applicable:

" (416) The Contractor, in consideration of the prices herein stipulated to be paid and received for the construction of said pavement, hereby agrees to maintain and keep said pavement in good repair at his own expense for and during a period of ten years from the date of the final acceptance of the work, so that at the end of said period said pavement shall be in good surface and condition and free from any defects that will impair its usefulness or durability as a roadway; it being understood that said maintenance and repairs shall be performed faithfully and promptly at all times, when required by the Commissioner of Public Works, and in accordance with the following provisions:     *     *     *

" (418) It is further agreed that if any repairs are required during the term of this guarantee, the said Commissioner shall notify the Contractor to make such repairs, by written notice, to be served on the Contractor either personally or by leaving said notice at his place of business, or residence, or with his agent in charge of the work. Said Contractor shall immediately complete said work to the satisfaction of the Commissioners and Engineer, and in case of failure or neglect to do so on his part within two days, the Commissioner of Public Works may proceed to make such repairs, and the expense thereof shall be paid from the funds reserved under this guarantee, and that failing to be sufficient, the party of the first part and his, its, or their sureties, will make good the deficiency, or the said city may, at its option, instead of using such percentage, or any portion of it, bring and maintain an action upon the guarantee bond to be given by the Contractor, and in that manner secure the moneys with which to pay such expenses.     *     *     *

" (420) As security for the guarantee, first, ten (10) per cent of the money due the Contractor for the item of brick pavement, as determined by the final estimate, shall be retained for ten years, to be invested in such securities, or

deposited in such banks as may be approved by the Mayor, Corporation Counsel and City Treasurer, for the benefit of the Contractor, the interest to be regularly paid to him if the terms of the guarantee are being fulfilled. The amount of said guarantee, less any deduction as aforesaid, shall be paid to him at the expiration of the term of guarantee, provided the pavement is in good condition as aforesaid."

Following the above is a requirement for the giving of a bond as further security that the contractor will carry out the agreement to keep the pavement in repair.

The learned trial court instructed the jury that even though no notices were given of the need of repairs to the pavements and no notices were given requiring the contractors to repair the same, still by the terms of the contracts the contractors were required to keep the pavements in repair, so that, if repairs were needed and not made by the contractors, but were made by the city authorities or under their direction, the expenses of such repairs could be taken from the guaranty funds. An exception was duly taken to this ruling by the appellant. This instruction to the jury, I think, was error. The provisions of the contract quoted above must be read together, and, as so read, the contractors could only be put in default for failure to make repairs by neglect to make them after written notices by the commissioner of public works were served upon them either personally or by leaving the same at their places of business or residences or with their agents in charge of the work. (*O' Keeffe* v. *City of New York,* 173 N. Y. 474; *City of New York* v. *Sicilian A. P. Co.,* 208 id. 45.)

The only notices claimed by the defendant to have been given to these contractors were in the letters sent through the mails already referred to. The learned trial court permitted the jury to find that these letters, if received by those to whom they were addressed, constituted a substantial compliance with the contracts for the service of notices requiring repairs to the pavements. In so instructing the jury I think the learned trial court again fell into error. There never was a moment when these copartners could not easily have been found for they were men well known in Rochester. Service upon one of them of a notice addressed to the copartnership

Fourth Department, November, 1918.          [Vol. 185.

would have been perfectly good. The time for performance of what might be required by the commissioner of public works was only two short days from the dates of the receipt of the notices. The contract definitely prescribed the method of the service of the notices and the city authorities had no right to adopt a less exacting means of service. The letter and the spirit of the contract required strict adherence to the prescribed method of service of the notices and such method of service of the notices was a condition precedent to the right of the city to make the repairs at the expense of the contractors.

The two letters calling for repairs to the Harrison street pavement were addressed to George W. Hagaman, individually and not to the copartnership doing business under the name and style of George W. Hagaman & Co. It seems that such a notice even served personally was not sufficient to put the copartnership in default. (*Asphalt P. & C. Co.* v. *City of New York, No. 2,* 149 App. Div. 622.)

It follows from the foregoing that the judgments and orders appealed from should be reversed and new trials granted in both causes, with costs to the appellant to abide the event.

All concurred, except KRUSE, P. J., and FOOTE, J., who dissented in a memorandum by KRUSE, P. J.

KRUSE, P. J. (dissenting):

I think in view of the specific findings that the letters were received by the persons to whom they were addressed, the error, if any, pointed out as the first ground for reversal in the opinion of Mr. Justice DE ANGELIS does not constitute reversible error. I do not think the mere fact that the letter was addressed to one of the individual members, instead of the firm which had been dissolved, was such a departure from the terms of the contract as to make it ineffective, and, therefore, vote for affirmance.

FOOTE, J., concurred.

In each case, judgment and order reversed and new trial granted, with costs to appellant to abide event.