James D. Hopkins, J.
The plaintiff, the assignee of a purchase-money mortgage, sues to foreclose the mortgage on the ground that the defendant, the mortgagor, has breached its provisions by (1) failing to pay interest and installment of principal when due, and (2) refusing to execute and deliver an estoppel certificate when requested. The defendant has raised several defenses and counterclaims. The court dismissed certain of the defenses and counterclaims at the trial; this opinion will deal with the remainder, the decision concerning which having been reserved.
The mortgage, now $46,593.66 in principal, is dated March 15, 1955, and was originally in the sum of $52,500; it covered premises known as 238 Huguenot Street, New Rochelle, New York, consisting of a three-story loft building, with three stores on the first floor. The contract of sale is dated January 27, 1955, and contained the following clause: “ All notes or notices of violations of law or municipal ordinances, orders or requirements noted in or issued by the Department of Housing and Buildings, Fire, Labor, Health, or other State or Municipal Department having jurisdiction against or affecting the premises at the date hereof, shall be complied with by the seller and the premises shall be conveyed free of the same, and this provision of this contract shall survive delivery of the deed hereunder.”
The defendant alleges as a defense and counterclaim that there existed at the time of the sale notices of violations entered by the State Labor Department, and that as a consequence the defendant would be compelled to expend $10,000 to cure the violations, and had suffered rental losses aggregating $55,000. The plaintiff urges preliminarily that a breach of the contract provision may not be the subject of a counterclaim against an assignee of the mortgage.
*3 It is now beyond dispute that an assignee takes subject to all defenses or counterclaims which the mortgagor possessed against the assignor, and that the counterclaim may be sustained as an offset to the amount due under the mortgage (Granick v. Mobach, 13 A D 2d 534 [2d Dept., 1961]). On the merits, however, the defendant has failed in establishing a basis for such a counterclaim.
The defendant’s proof showed that sometime in 1946 violations were lodged against the premises by the State Labor Department, and that in 1956 (after the sale) violations were also lodged against the premises by the State Labor Department. The evidence does not show that the violations were the same; indeed, the proof establishes that the 1946 violations were eliminated by the plaintiff’s assignor (or its tenant) in 1947. The proof further establishes that the premises were vacant at the time of the making of the contract and the time of the transfer of title, and that the 1956 violations were posted as a result of the erection by the defendant’s tenant of new partitions in the building.
The authorities construing the contract clause quoted above hold that the notes or notices of violations of State or municipal law and regulations must exist of record at the time of the contract or sale before the seller will be rendered liable for damages (Montkane Funds v. Ruff, 57 N. Y. S. 2d 208, affd. 269 App. Div. 1021; Kaloumenos v. Bottaccio, 67 N. Y. S. 2d 527, affd. 273 App. Div. 907; Hattman v. 212-214 South Ninth St. Corp., 147 N. Y. S. 2d 552; cf. Leyetta Corp. v. Peters, 3 A D 2d 724). A violation, cleared some eight years previously, hardly serves as grounds for a breach of the contract of sale, and neither the plaintiff nor its assignor may be said to be responsible for a violation caused by the occupancy of the defendant’s tenant. This defense and counterclaim are, therefore, dismissed.
The defendant has also questioned whether plaintiff is the real party in interest by contending that it had not acquired title to the mortgage at the time of the alleged defaults or at the time of the commencement of the action. The original mortgagee (238 Huguenot Corp.) owned the mortgage from the time of its execution until the filing of a certificate of dissolution on September 11, 1959; prior to the latter date the plaintiff had purchased all of the shares of stock from its stockholders; and subsequent to that date, by written assignment duly recorded and acknowledged on September 24, 1959, the mortgagee assigned the mortgage to the plaintiff. That assignment was executed by the president of the corporation in dissolution, and *4 the defendant argues that only the directors, and not the president, may validly transfer assets of a dissolved corporation.
At common law, upon dissolution of a corporation, its assets escheated to the sovereign (Security Trust Co. v. Pritchard, 201 App. Div. 142, 145). The Legislature enacted statutory procedures to avoid the injustice thus created (now Stock Corporation Law, § 105 and General Corporation Law, § 29). Section 105 of the Stock Corporation Law permits the dissolution of a stock corporation (such as the mortgagee) by the filing of a certificate in the office of the Secretary of State; and subdivision 8 thereof provides for the continued existence of the corporation for the purpose of collecting and distributing its assets, among other purposes. Section 29 of the General Corporation Law states that in the absence of other provisions the directors have ‘ ‘ full power to settle its affairs and to distribute to the persons entitled thereto the assets remaining after the payment of debts and necessary expenses ’ ’, that ‘ ‘ the directors may, from time to time, elect or appoint officers of the corporation ”, and that “ [T]he corporate property may be transferred or conveyed by an instrument executed in the corporate name by one or more of the officers or directors thereunto authorized by the directors ”.
The acknowledgment on the assignment recites that the president signed his name thereto by order of the board of directors. Under these circumstances, and without evidence to the contrary, plaintiff’s title to the mortgage was established as of the time that the assignment was acknowledged. The evidence is sufficient to demonstrate the president’s authority to execute and deliver the assignment (Asphalt Paving & Contr. Co. v. City of New York, 149 App. Div. 622, 630-631, affd. in principle, 210 N. Y. 605). In the absence of fraud, or a claim by the stockholders of the dissolved corporation that the transfer deprived them of their rights, a rigorous and overly technical emphasis on the proof of an assignment of a mortgage to meet the objections of the mortgagor should not prevail. In reaching this conclusion, the court has considered only the exhibits received at the trial, and not any of the material submitted by the plaintiff after the trial.
The events claimed to constitute defaults under the mortgage must now be reviewed. The mortgage provides in part: “ 7. That the mortgagor within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any offsets or defenses exist against the mortgage debt.”
*5 Paragraph “ 14 ” of the mortgage provides that the failure of the mortgagor to observe any of the covenants contained in the mortgage shall be a ground for an exercise of an option by the holder thereof to declare the principal due; paragraph “ 4 ” specifically enumerates as a default the failure to furnish an estoppel certificate.
The plaintiff proved that an officer of the corporation refused to execute an estoppel certificate upon request. The court finds, however, that the refusal was not unconditional; it was coupled with the statement that the estoppel certificate could not be executed in the form presented; and the officer offered to execute the instrument with the language that a claim or offset existed on behalf of the mortgagor based on the alleged violations against the premises at the time of the sale.
Under certain circumstances the refusal to execute an estoppel certificate results in a default of the mortgage (see Real Property Law, § 254, subd. 7; 3 Warren’s Weed, New York Law of Beal Property [4th ed.], § 21.03, pp. 714-715). But here there was not an outright refusal. The mortgage provision does not, and, indeed, could not require that the mortgagor sign a certificate which waived its reservation of a claimed offset. True, as the evidence has shown, the claim was untenable, but the conditions must be regarded as they appeared at the time and not as in the light of a later adjudication. For these reasons, the court finds no ground for a default for failure to execute an estoppel certificate.
The mortgage provided for quarter-annual installments of principal with interest payable similarly; upon a default in the payment of any installment of principal or of interest for 15 days the principal sum became due at the option of the holder of the mortgage. On December 15, 1959, an installment of principal, together with interest, was payable. The defendant failed to make payment within the grace period, and this action was commenced on January 14,1960. The defendant then mailed a certified check in the required amount, and this was returned by the plaintiff.
The defendant excuses its default by asserting (1) that under a prior course of conduct it had been billed by the mortgagee; (2) that it had been informed that the mortgage was to be assigned, and it did not know to whom the payment was to be made; and (3) that under equitable considerations the court should not direct a foreclosure. These contentions are considered in their order.
1. The mortgage contains no provision for billing the mortgagor by the holder of the mortgage. The defendant makes no *6 claims that a modification of the mortgage by subsequent agreement occurred either with the assignor of the mortgage, or with the plaintiff. It relies solely on a custom of the assignor to send bills for the interest and amortization. There was, however, no obligation on the holder of the mortgage to send bills; and what was a gratuitous act may not be turned into a species of estoppel against the plaintiff.
2. The evidence is that the defendant was notified by letter, dated September 14,1959, from the assignor (and original mortgagee), and told to make all future payments to the assignee. The defendant claims that thereafter it was told by a representative of the plaintiff that the mortgage was to be assigned again, and that it would be notified of the assignment. However, it was not informed of any assignment, and its duty under the mortgage was to pay to the holder of the mortgage, as it knew it to be, the amount due on December 15, 1959. If it had made payment under a mistake as to the identity of the mortgagee, then surely equity would prevent the imposition of a default. The defendant could not stand by, however, without attempting to meet the obligation falling due, relying on an oral representation (cf. Real Property Law, § 282, subd. 1; Samuels v. Kurland, 6 Misc 2d 814, affd. 5 A D 2d 686).
3. The defendant invokes the equity power of the court to protect it against an unintentional default. There are limits to .the jurisdiction of equity, however, and it is not enough to move the court to claim misapprehension or negligence. The rule is explicit that ‘ ‘ a mortgagor is bound by the terms of his contract as made and cannot be relieved from his default, if one exists, in the absence of waiver by the mortgagee, or estoppel, or bad faith, fraud, oppressive or unconscionable conduct on the latter’s part ” (Ferlazzo v. Riley, 278 N. Y. 289, 292).
The limits of equitable jurisdiction were laid down in Graf v. Hope Bldg. Corp. (254 N. Y. 1), when Judge Cardozo sought in vain to extend the power of equity to relieve against a default of payment of taxes or assessments occurring once or for a short time to the instance of a default of payment of interest or principal. The majority held that a mistake, no matter how excusable, cannot afford the basis for equitable intervention against a foreclosure for nonpayment of principal or interest, in the absence of conduct on the part of the mortgagee which gave rise to an unintentional default.
In the case at bar, the court has searched the record without uncovering any action on the part of the mortgagee which was in bad faith, or oppressive, or unconscionable. True, this action was brought within a short time after the lapse of the grace *7 period, but that does not constitute oppression or behavior shocking to the conscience. Nor does the court find that the defendant’s default was the result of an excusable error.
The court finds no grounds supporting the defendant’s claims of excusable default, or that there is any defense to the action. Judgment is granted in favor of the plaintiff.^